

**Jeremy A. Lieberman**
Managing Partner

August 14, 2018

**VIA CM/ECF**

The Honorable Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *Kacouris v. Facebook, Inc.*, No. 1:18-cv-06765-RJS ("*Kacouris*")

Dear Judge Sullivan:

We are counsel for James Kacouris, Plaintiff in the above-referenced *Kacouris* action. Pursuant to Your Honor's Order entered August 13, 2018 (Dkt. No. 7), we write in response to the letter of Public Employees' Retirement System of Mississippi ("Mississippi") and Amalgamated Bank, as Trustee for the LV LargeCap 1000 Growth Index Fund, Longview Quantitative LargeCap Fund, and the LongView Quant LargeCap Equity VEBA Fund ("Amalgamated" and, together with Mississippi, the "Intervenors"), filed on August 9, 2018 (Dkt. No. 6).

The Intervenors are Lead Plaintiffs in *In re Facebook, Inc. Sec. Litig.*, No. 5:18-cv-01725-EJD ("*Facebook I*"), and have stated their intention "to intervene in" both *Kacouris* and another action pending against Facebook, Inc. ("Facebook")[1] "and request that the Court transfer both cases to the Northern District of California" for consolidation with *Facebook I*. (*Id.*) Rule 24 of the Federal Rule of Civil Procedure clearly states the standards for intervention. Intervention of right is appropriate where a party "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Permissive intervention is warranted where a movant "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Plaintiff notes that a recitation of these standards is conspicuously absent from the Intervenors' letter and respectfully submits that intervention is not warranted in this instance.

---

[1] *Helms v. Facebook, Inc.*, No. 1:18-cv-06774-PAE

jalieberman@pomlaw.com
600 Third Avenue, New York, New York 10016  tel: 212.661.1100  www.pomerantzlaw.com
NEW YORK     CHICAGO     LOS ANGELES     PARIS

{00290290;2 }

The Honorable Richard J. Sullivan
August 14, 2018
Page 2

The relief that Intervenors seek is strongly disfavored by courts. Where additional disclosures, subsequent to the appointment of a lead plaintiff in a PSLRA action, "alter[] dramatically the gravamen of the claims alleged against the Defendants", courts disfavor permitting the lead plaintiff to file an amended complaint to encompass the new class period and allegations without publication of a new PSLRA notice regarding the new claims. *Dube v. Signet Jewelers Ltd.*, 2017 U.S. Dist. LEXIS 57624, at *4 (S.D.N.Y. Apr. 14, 2017).[2]

The crux of the Intervenors' argument is that the filing of the *Kacouris* action and the publication of a notice of its pendency constitutes "an improper end-run around" the procedure of the PSLRA in light of the purported factual and legal similarities between *Facebook I* and *Kacouris*. However, the Intervenors' application relies on a significant mischaracterization of the facts of the *Kacouris* action. Contrary to Intervenors' misleading assertion, the *Kacouris* action is **not** "based on subsequent disclosures of the same fraud" at issue in *Facebook I*. Rather, these actions are factually distinct, and plainly allege different misrepresentations and disclosures occurring during different class periods. *See Hachem*, 2018 U.S. Dist. LEXIS 62278, at *6 (new PSLRA notice warranted where factual distinctions "taken together . . . 'alter dramatically the gravamen of the claims alleged'") (quoting *Dube*, 2017 U.S. Dist. LEXIS 57624, at *6).

The core allegations in the complaints in the actions subsequently consolidated into *Facebook I* concern the revelation that Facebook, in violation of its own purported data privacy policies, had permitted Cambridge Analytica to access the personally identifiable information of tens of millions of Facebook users. The longest class period alleged in those complaints extended from February 3, 2017 to March 23, 2018. By contrast, the core allegations in the *Kacouris* action concern Facebook's disappointing second-quarter 2018 earnings announcement and warning of a sharp slowdown in sales growth in coming quarters, and the disclosures that its number of daily and monthly active users was declining and that Facebook would increasingly focus on promoting features of its social media platform with historically lower levels of monetization. The *Kacouris* action likewise alleges a separate, non-overlapping class period extending from April 25, 2018 to July 25, 2018. Accordingly, publication of a notice of pendency of the *Kacouris* action, advising investors of the class period at issue and their right to seek appointment as lead plaintiff on or before September 25, 2018, was not "improper". Nor was it an "effort[] to restart the lead plaintiff appointment process", or to in any sense effect an "end-run" around the PSLRA process. Rather, it was in lockstep with the orderly procedure unambiguously mandated by the statute.

The relief that Intervenors request would itself be the very definition of an end-run around the orderly procedures established by the PSLRA. The Intervenors' appointment as Lead Plaintiffs in *Facebook I* does **not** empower them to halt the statutory lead plaintiff process in

---

[2] *See also Hachem v. GE Inc.*, 2018 U.S. Dist. LEXIS 62278, at *5 (S.D.N.Y. Apr. 11, 2018) (new PSLRA notice appropriate where later-filed complaint contained different "substantial allegations" and additional stock drops); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013) ("'allowing plaintiffs in this case to proceed without publishing a new notice reflecting their additional claims would potentially exclude qualified movants from the lead plaintiff selection process.'") (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 U.S. Dist. LEXIS 10780, at *8-*9 (S.D.N.Y. June 1, 2005)).

The Honorable Richard J. Sullivan
August 14, 2018
Page 3

*Kacouris*, thereby depriving investors who purchased Facebook securities between April 25, 2018 and July 25, 2018 (the *Kacouris* class period)—*after* the *Facebook I* class period—of their statutory right to seek appointment as lead plaintiff in the *Kacouris* action. Neither of the complaints that were consolidated into *Facebook I* alleges securities fraud claims encompassing the *Kacouris* class period. The scope of the Intervenors' authority as lead plaintiffs in *Facebook I* is defined by the contours of the order appointing them as such, and that order only concerned the class periods and allegations in the complaints in the two consolidated actions. The Intervenors cannot, by their own fiat, appoint themselves as lead plaintiffs on behalf of the putative class in the *Kacouris* action merely by noting that they intend to file an amended complaint that "will cover the entire class period" in the *Kacouris* action. (Dkt. No. 6 at 3 n 4.)

While Intervenors conclusorily state that allowing the lead plaintiff process to proceed in the *Kacouris* action "threatens to cause significant prejudice to the class" in *Facebook I*, they fail to explain how or why that prejudice will occur. By contrast, granting Intervenors' requested relief will significantly prejudice the putative class in the *Kacouris* action. The complaints in *Facebook I* only allege stock drops totaling 9.15%, or $16.94 per share; moreover, subsequent to the corrective disclosures, Facebook's stock price significantly recovered from a low of $149.02 on March 26, 2018 to a high of $218.62 on July 25, 2018. Meanwhile, the *Kacouris* complaint alleges a significantly larger total stock drop of $41.24, or 18.96% per share, between July 25 and July 26, 2018—a staggering loss of $120 billion of shareholder value, the largest single-day destruction of market value in history. Given this massive loss, it is highly unlikely that Intervenors, having collectively alleged only $1.65 million in losses traceable to the fraud alleged in *Facebook I*, would have the greatest financial interest in the *Kacouris* action. Conversely, numerous Facebook investors who would have lacked a meaningful financial interest in *Facebook I* now have strong incentives to seek appointment as lead plaintiff in the *Kacouris* action. *See Kaplan*, 947 F. Supp. 2d 366, 367 (finding that "substantial alteration of the claims" in a complaint "make[s] it more likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice"). Depriving those investors of the opportunity to seek appointment as lead plaintiff will not only prejudice them individually, it will also deprive the class of the benefits of a vigorous lead plaintiff appointment process, designed to ensure that the "most adequate plaintiff" of a given class emerges as class representative, with sufficient incentive to vigorously prosecute the action on behalf of the class. *See Bombardier*, 2005 U.S. Dist. LEXIS 10780, at *8-*9 (favoring publication of new notice rather than "potentially exclude qualified movants from the lead plaintiff selection process").

For the foregoing reasons, Plaintiff respectfully submits that the Intervenors' motion should be denied.

Respectfully submitted,

*/s/ Jeremy Lieberman*

Jeremy A. Lieberman

cc:   All counsel of record via ECF

{00290290;2 }